## AUSTIN v. WILSON.

*(Superior Court of Buffalo, General Term.   October 30, 1890.)*

1. ACCOUNT STATED—WHAT IS.

   The retention by defendant of several bills for goods delivered by plaintiff without authority, and without any previous dealings between the parties, does not render defendant liable on an account stated where he repudiated the sale, and returned the goods as soon as he discovered them on his premises.

2. ESTOPPEL—IN PAIS—SILENCE.

   As defendant was guilty of no negligence in connection with the delivery of goods, no obligation rested on him to make active efforts to discover whether or not the goods were on his premises; and hence his failure to make such an effort on the presentation of the bills for the goods does not estop him from denying his liability thereon.

Appeal from municipal court.

Action by James C. Austin against C. Townsend Wilson for mill supplies. There was a judgment in plaintiff's favor, and defendant appeals.

Argued before BECKWITH, C. J., and TITUS and HATCH, JJ.

*H. D. Fitzgerald,* for plaintiff.   *Clarence W. Wilson,* for defendant.

HATCH, J.   The substantial facts upon which the judgment in this action is based, are conceded.   Plaintiff is a dealer in engine supplies, and defendant is the proprietor of a steam planing-mill.   On February 16, 1888, plaintiff was informed by a person in his employ that the engineer of defendant's mill had ordered some packing, and thereupon he filled the order, and delivered the packing at defendant's mill, leaving it in the engine-room.   Two or three months after, plaintiff sent by mail a bill of the packing to defendant, which he received, but gave it no attention.   Subsequently, three or four other bills were in like manner sent and received, and met with like treatment.   On February 2, 1889, defendant called upon plaintiff, and inquired who gave the order for the packing; refused to take or keep it; and requested its removal.   Subsequently defendant sent the packing to plaintiff, who returned it.   Defendant did not discover that the packing was at the mill until about the time he called upon plaintiff.   The parties never had any previous dealings, and defendant did not authorize his engineer or any one else to order the packing.   When discovered, none of the material had been used; but when sent back, it was in poor condition.   At the close of plaintiff's proof, defendant moved for a nonsuit, which was denied.   The court below based its judgment upon the theory of an account stated, and permitted an amendment of plaintiff's pleading in order to authorize it.   It was not claimed upon the argument, and could not be with success, that the order by the engineer, and delivery of the goods to him at the mill, created any liability against the defendant.   The parties were strangers.   No dealings had ever been had. Plaintiff did not know in fact who gave the order, or whether the person ordering had authority or not.   The defendant had given no authority to make the purchase, nor had he clothed the engineer or other person with apparent authority to make it.   Clearly, then, when the packing was delivered, no liability was created against the defendant, and consequently there was at this time no debt upon which an account could be rendered.   If liability was created, we must seek for it in subsequent acts; and this brings us to a consideration of the question, can a liability be created by rendering a claimed statement of account, when in fact no debt exists?   To my mind, it seems clear that a negative answer must be returned.   The authorities say that it takes two parties to make an account stated,—a debtor and a creditor.   *Stenton* v. *Jerome,* 54 N. Y. 484.   In *Volkening* v. *De Graaf,* 81 N. Y. 268, Judge FOLGER says: "The emphatic words of a count, upon an account stated were, in former days, *insimul computassent,* that 'they [the plaintiff and defendant] accounted together.'   And the count went on to say that on such account-

ing the defendant was found in arrear, and indebted to the plaintiff in a sum named; and, being so found in arrear, he undertook and promised to pay the same to the plaintiff." Search of the authorities will be vain to find a case where liability has been decreed upon an account stated where a basis for its rendition did not in the beginning exist. It is true that the evidence to support an account stated may be found in circumstances from which an assent will be inferred, as when one party presents his account to the other, which the latter retains, making no objection, an inference may arise that the party is satisfied, and gives assent to its correctness. The more numerous the statements sent, and the longer the lapse of time without objection, the stronger becomes the inference. *Lockwood* v. *Thorne*, 11 N. Y. 173. This, however, is but an inference. It may be explained or rebutted by proof of other circumstances. As the basis of liability is the supposed meeting of the minds of the parties upon the correctness of the account, so any circumstance which tends to legitimately throw light upon that question is competent to rebut that inference. *Lockwood* v. *Thorne*, 18 N. Y. 288, 289; *Samson* v. *Freedman*, 102 N. Y. 701, 7 N. E. Rep. 419. It is here that the misapprehension arose in the court below, who treated the inference arising out of the retention of the account without objection as conclusive. This was fallacious. As was said by Judge CHURCH: "Where, for some independent reason, a person disclaims all liability, he is not bound to examine the items, or be taken to have assented to them, if he does not object. In such a case, he puts himself on higher ground. He says in effect: 'I have nothing to do with this account, and I deny all liability for anything.' If he fails in maintaining the position he has assumed, it cannot be said that he admits the correctness of all the items, for the simple reason that his silence as to them is not inconsistent with his subsequent denial." *Quincey* v. *White*, 63 N. Y. 379. Here the defendant not only took the higher ground, but he succeeded in establishing that there was no account upon which he was liable. The inference arising from the retention of the account is therefore seen to be completely overthrown, if liability could be created in that way. But in this case there was no account between the parties, nor had there been dealing. It is therefore manifest that nothing existed upon which an account could be stated. *Field* v. *Knapp*, 108 N. Y. 87–93, 14 N. E. Rep. 829; *Lemere* v. *Elliott*, 6 Hurl. & N. 656. The distinction seems to be that an account stated only determines the amount of the debt where liability exists. It may not be made the instrument to *per se* create a liability where none before existed.

The claim is however made that defendant is estopped from denying liability, for the reason that the notice imposed the obligation of inquiry to discover if the goods had been delivered, and for his failure the plaintiff has suffered injury. It was said by SELDEN, J.: "The parties are never precluded from giving evidence to impeach the account, unless the case is brought within the principles of an estoppel *in pais*, of an obligatory agreement between the parties, as, for instance, where, upon a settlement, mutual compromises are made." *Lockwood* v. *Thorne*, 18 N. Y. 292. It is readily seen that there is here presented nothing upon which an estoppel can be based. Defendant was guilty of no negligence in connection with the ordering of the goods. No obligation rested upon him to take active efforts to discover whether the goods were upon his premises or not. As was said by EARL, J.: "Here there was no negligence of Raines in clothing Phelps with apparent authority to indorse, or in causing or permitting any appearances which caused the defendant to rely upon the indorsements. The negligence alleged is simply that Raines did not use ordinary care to discover and prevent the frauds of Phelps; and there is no authority for holding that such negligence can work an estoppel. If it could, merchants, bankers, and other business men having numerous clerks, would hold their property by a precarious ten-

ure. And a party may also be estopped by his negligence, when his name has been forged, and for an unreasonable time he neglects not to discover the forgery, but to give notice thereof after discovery to the party imposed on." *People* v. *Bank*, 75 N. Y. 562. Here notice was at once given upon discovery by defendant that the goods were at the mill. They were found in the engine-room, where plaintiff had left them, and unused. The law imposed no further duty upon the defendant. *Avery* v. *Leach*, 9 Hun, 106, is not necessarily in conflict with these views. We have been furnished with the original record of that case, and from it it appears that defendant had previously carried on business as a farmer and milkman, and dealt with the plaintiff. At the time the goods were purchased, defendant had rented his farm to his son, who was carrying it on on shares. The bill was for shorts for the cows, and coal used in the house where defendant lived. The goods were charged to defendant, and a bill rendered him, which was retained; and when sued he offered to pay it, but refused to pay the costs. The court treated the transaction as an account stated, and affirmed the judgment. In the present case, the parties were strangers, had never previously had dealings, and there was no offer to pay, or recognition of liability. The case goes to the extreme verge in support of an account stated. The elements of difference are slight, but we are unwilling to extend the doctrine further. Our conclusion is that the judgment must be reversed, with costs. All concur.