[L. A. No. 4946.   Department One.—July 30, 1919.]

EDMON GORDON BENNETT et al., Respondents, v. HOW-
ARD J. POTTER, Appellant.

[1] ATTORNEY AND CLIENT — WRITTEN CONTRACT OF EMPLOYMENT—
PROSECUTION OF ACTION FOR PARTITION AND ACCOUNTING—COMPEN-
SATION FOR SERVICES.—A written contract employing attorneys at
law to prosecute actions for the partition of land, and for an ac-
counting between the partitioners respecting their transactions as
tenants in common of the land, and providing that such attorneys
"shall receive as their compensation ten (10) per cent of whatever
is recovered, either by litigation or settlement, excepting that if
the court makes an allowance for an attorney's fee in said parti-
tion suit or other suits then such fee shall belong to the said
law firm, exclusive of the said ten (10) per cent so to be paid by
the party of the first part," does not justify the allowance to such
attorneys of ten per cent of the value of the land set off to their

client, plus the attorney's fee allowed in the partition suit, since the two provisions are not cumulative but alternative, and the intention was to substitute the allowed fee, if any, in the partition suit as compensation for the services therein, instead of the ten per cent specified in the first part of the compensation clause of the contract.

[2] PARTITION—SUIT TO SEVER UNITY OF TITLE—PARTITIONED PORTIONS NOT "RECOVERED."—Land set off to one party in a partition suit to sever the unity of title and segregate the possession is not "recovered" by him, since such a suit does not change the title, nor transfer it from one to the other, nor return or restore to either party anything lost by him, or of which he had been deprived, but it merely transforms the right of common possession of the whole tract into a right to the exclusive possession of the same interest or share, as represented by the parcel set off to him in severalty.

[3] ACTION FOR RECOVERY OF LEGAL SERVICES—WRITTEN CONTRACT—ACCOUNT STATED—FINDING UNSUPPORTED BY EVIDENCE.—In an action on such contract, the finding of an account stated is not sufficiently supported, where it is based exclusively on the testimony of one of the attorneys relating a conversation he had with the client shortly after the judgments were given in the two actions wherein the value of the segregated land was agreed upon for the purpose of fixing the percentage.

[4] ACCOUNT STATED—ORAL AGREEMENT.—An account stated may be shown by proof of an oral agreement as to the amount due, although no writing is exhibited at the time.

[5] ID.—EXECUTORY CONTRACT.—An account stated is a mere unperformed promise by one party to pay a stated sum to another, and it is therefore an executory contract.

[6] WRITTEN CONTRACT—ALTERATION BY ORAL ACCOUNT STATED.—A written contract of employment cannot be altered by an oral statement of account, or by any statement not agreed to in writing by the debtor, in view of section 1698 of the Civil Code, which provides that a contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.

[7] ACCOUNT STATED—THEORY OF ACTION.—The theory upon which the action on an account stated is allowed is that transactions have occurred between the parties from which the relation of debtor and creditor has arisen, that thereafter one or both have rendered or made statements or declarations specifying definitely the amount due on account thereof and thereupon there has been an agreement, express or implied, by the one who is the debtor, to the other, that a certain sum is due from him on such account, together with an express or implied promise to pay the same. The action is based on the promise to pay thus established, and if it is not expressly made, facts from which such promise will be implied must be proven.

CLXXX Cal.—47

[8] ID.—PREVIOUS TRANSACTIONS ESSENTIAL.—There can be no account stated where there have been no previous transactions between the parties from which the relation of debtor and creditor could arise.

[9] ID.—PROMISE TO PAY EXISTING DEBT—CONSIDERATION.—There is a fundamental difference between a mere promise to pay an existing debt made upon no new consideration and a promise to pay it which is founded on a new consideration, such as further forbearance to which the creditor binds himself by accepting this new promise or by some other valid agreement or a new promise which has the effect of merging the original obligation and in effect extinguishing it as a living contract.

APPEAL from a judgment of the Superior Court of Los Angeles County. G. W. Nicol, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

William M. Hiatt and Irwin, Smith & Rosecrans for Appellant.

Hugh Kelley for Respondents.

SHAW, J.—The defendant appeals from a judgment in favor of the plaintiff. The complaint is in four counts. The only controversy concerns the first and the third counts, each of which covered the same demand.

The plaintiffs were attorneys at law and partners in the practice of law. The defendant was the owner as tenant in common with S. W. Slinkard and Laura Slinkard, his wife, of 160 acres of land and certain crops and other personal property used on the land in connection with its cultivation, the defendant having eleven-sixteenths interest therein and the Slinkards five-sixteenths interest. In July, 1914, he employed the plaintiffs, as attorneys, to prosecute actions for the partition of the land and the division of the property and for an accounting between himself and the Slinkards respecting their transactions as tenants in common of the land. The contract of employment was in writing. The plaintiffs began two actions, one for partition, the other for an accounting, and prosecuted the same to a final determination. The first count of the complaint states a cause of action on the written contract aforesaid, claiming $2,750 as the amount due thereon. The third count alleges that on April 6, 1915, an account was stated between the parties embracing the services in the two

actions, whereby the sum of $2,750 was found to be due from the defendant to the plaintiffs, which sum remained unpaid. The decision of the case depends upon the meaning and effect of the aforesaid contract. It will be necessary to set out the important parts thereof in full.

It recited that the defendant and the Slinkards were the owners of the land and the personal property thereon as tenants in common, and stated their respective interests therein, and that the defendant desired to employ the plaintiffs "to prosecute on his behalf a suit for a partition of the said property, to the end that his interest in the said property may be set aside and segregated from that of the said S. W. Slinkard and his wife, and to secure his interests in the personal property, improvements, etc., and also to bring suit for an accounting between himself and S. W. Slinkard and his wife, to the end that he may recover, or it may be determined just what his interests are in the profit and income from the property since he purchased the eleven-sixteenths interest on September 25, 1913." It then proceeded to state an agreement that plaintiffs should proceed with such litigation as they deemed necessary and prosecute the same to a conclusion or settlement to the satisfaction of Potter. With reference to the liability of Potter to plaintiffs for the services the agreement was as follows:

"It is understood and agreed that the said law firm will advance the necessary expenses and other costs and shall receive as their compensation ten (10) per cent of whatever is recovered, either by litigation or settlement, excepting that if the court makes an allowance for an attorney's fee in said partition suit or other suits then such fee shall belong to the said law firm, exclusive of the said ten (10%) per cent so to be paid by the party of the first part."

The court found that in the partition suit the court had allowed to Potter, plaintiff therein, the sum of one thousand dollars as attorneys' fees. This is inaccurate. The judgment in that suit was introduced in evidence and it shows that the court allowed one thousand dollars to Bennett, Turnbull & Thompson, as attorneys for Potter, declaring the same to be a lien on the land awarded to Potter, and five hundred dollars to the attorneys for the Slinkards, and declared the same a lien on the land awarded to them. The allowance was made directly to the attorneys and not, as the law contemplates, to the parties. (Code Civ. Proc., sec. 796.)

1. As to the first count, the findings in the case at bar were to the effect that the plaintiffs were entitled to recover of Potter the sum of $2,750 on account of the services rendered in pursuance of the written contract. Of this sum $1,750 was allowed as ten per cent on the value of the land set off to Potter and one thousand dollars on account of the fee allowed in the partition suit. The findings declare that the meaning of the contract of employment is "that as compensation for such services said plaintiffs were to receive ten per cent of whatever was allowed or recovered by said litigation or settlement thereof; and in addition thereto, to receive any attorney's fees allowed to the defendant, Howard J. Potter, in such litigation."

[1] We cannot agree with this interpretation. The provisions of the contract regarding compensation are uncertain and ambiguous. Such a contract "may be explained by reference to the circumstances under which it was made, and the matter to which it relates" (Civ. Code, sec. 1647); it is to be "interpreted most strongly against the party who caused the uncertainty to exist" (Civ. Code, sec. 1654); and the language does not of necessity govern its interpretation if it involves an absurdity. (Civ. Code, sec. 1638). The contract was drawn by the plaintiff, Bennett. Hence. it is to be interpreted most strongly against the plaintiffs. This rule is accentuated by the fact that the plaintiffs were attorneys at law and presumably familiar with legal terms and proceedings and accustomed to the use of language appropriate to the framing of contracts, while the defendant was a business man with no special knowledge of, or familiarity with, these subjects.

The partition suit was solely for the partition of the land. The judgment therein was for a partition in kind, setting off a certain parcel thereof in severalty to Potter and the remainder in severalty to the Slinkards. The complaint in the action for an acounting set forth the ownership of the land in common by the parties, that they had been farming the same together for the common benefit, their respective interest in the profits and the personal property in use being the same as in the land, as above stated; that Potter had expended certain sums of money in the enterprise; that the Slinkards had received profits therefrom for which they had failed to pay or account to Potter; and prayed that an account be taken, that the personal property be divided between the parties accord-

ing to their interests, and that judgment be given to Potter for the amount found due him. Some alfalfa hay was divided between them by an agreement made while the action was pending and is not mentioned in the judgment. The other personal property was sold by them and taken into the account. The judgment was for $375 in favor of Potter. The complaint in the case at bar contains no allegations relating to the value of the services in obtaining the division of the hay.

The attorney's fee allowed in the partition suit was based on the allegation of the complaint in that action "that two thousand dollars is a reasonable counsel fee for the services rendered and to be rendered herein." It is to be presumed that the amount allowed was considered by the court to be the full value of the services rendered, the more especially since an additional amount was allowed to other attorneys for services to the Slinkards. We must also presume that the provision of the contract that the plaintiffs should have "ten per cent of whatever is recovered" was considered by the parties to be full compensation, so far as it applied to the particular suit, for all services to be rendered by plaintiffs as attorneys in that action, if, as might be the case, no attorney's fee was allowed therein. An interpretation which would give them both, as that of the court below does, would involve the absurdity of giving them twice the value of the service rendered. Such construction cannot be allowed if any other reasonable interpretation can be found. Under section 1638, aforesaid, the language which is supposed to declare the absurdity does not necessarily "govern its interpretation." The two provisions should, therefore, be held not to be cumulative with respect to the partition suit.

Furthermore, the language itself does not warrant the court's interpretation. Its conclusion was that the phrase "ten per cent of whatever is recovered," means "ten per cent of *the value* of whatever is recovered." But the contract does not mention *value.* It was ten per cent of the thing itself that the plaintiffs were to receive. If we asume that the land set off to a party in an action for partition is "recovered" by him, then plaintiffs would be entitled to a one-tenth interest in Potter's share of the land and they could not maintain an action for the value thereof. Moreover, there was no issue in the partition suit, as to the title to the land, or as to the re-

spective interests therein. It was a simple suit to sever the unity of title and segregate the possession. [2] The land set off to one party in a partition suit of that character is not "recovered" by him. A simple partition does not change the title, nor transfer it from one to the other, nor return or restore to either party anything lost by him, or of which he had been deprived. It merely transforms the right of common possession of the whole tract into a right to the exclusive possession of the same interest or share, as represented by the parcel set off to him in severalty. He thereafter holds in severalty that interest which he previously held in undivided form. He does not recover the segregated parcel, nor even the possession thereof, but keeps such possession and thereafter excludes the other tenants from that parcel. (*Christy* v. *Spring Valley W. W.,* 68 Cal. 75, [8 Pac. 849]; *Richardson* v. *Loupe,* 80 Cal. 503, [22 Pac. 227]; *Cunha* v. *Hughes,* 122 Cal. 113, [68 Am. Rep. 27, 54 Pac. 535]; *Rose* v. *Mesmer,* 142 Cal. 328, [75 Pac. 905]; Freeman on Cotenancy, sec. 529.) The only reasonable conclusion is that the two provisions are not cumulative, but are alternative, and that the intention was to substitute the allowed fee, if any, in the partition suit, as compensation for the services therein, instead of the ten per cent specified in the first part of the compensation clause of the contract. This is emphasized by the succeeding phrase, "exclusive of the ten per cent so to be *paid* by the party of the first part." The word "paid" is significant. The ten per cent of the property set off to Potter could not be said to be *paid,* in any sense of the word. But with respect to ten per cent of any money that might be recovered or obtained on the accounting, it would be in accordance with ordinary usage to say that it would be paid to the plaintiffs by Potter. The giving of the fee to be allowed in the partition suit to plaintiffs was not intended as compensation for their services in the other litigation. The meaning is that the receipt of the fee so allowed should not exclude the attorneys from receiving ten per cent upon the amount obtained in the accounting. This we believe to be the correct interpretation of the contract. It does not authorize a judgment which includes more than one thousand dollars for the services in the partition suit.

It may be noted here that the money recovered in the accounting suit did not cover the alfalfa hay on the farm. It was divided by agreement and the plaintiffs, under the con-

tract, were entitled to ten per cent thereof.   But the complaint needs amendment in order to present clearly and specifically the claim for that part of the compensation.

2. The court also found that there had been an account stated between the plaintiffs and the defendant, as alleged in the complaint, and that it was thereby ascertained and agreed that defendant was indebted to plaintiff in the sum of $2,750 on account of the services rendered by them to Potter under the contract aforesaid.   [3]   We think this finding is not supported by sufficient evidence.

The evidence does not show that any account was kept in writing, or that any written statement of account was ever presented or delivered to the defendant, or agreed to or acquiesced in by him.   The finding is based exclusively on the testimony of the plaintiff, Turnbull, relating a conversation he says he had with Potter on the 6th of April, 1915, shortly after the judgments were given in the two actions.

[4]   It has been held by this court that an account stated may be shown by proof of an oral agreement as to the amount due, although no writing is exhibited at the time.   (*Converse* v. *Scott,* 137 Cal. 239, [70 Pac. 13].)   The decision states the rule to be that such would be the case even if no written evidence of the account had ever existed.   (See, also, 1 Corpus Juris, p. 682, sec. 256.)   Somewhat in conflict with this is the case of *Coffee* v. *Williams,* 103 Cal. 556, [37 Pac. 504], where the court said: "An account stated is a document—a writing — which exhibits the state of the accounts between the parties and the balance owing from one to the other."   In *Gardner* v. *Watson,* 170 Cal. 574, [150 Pac. 994], and again in *Merchants' Nat. Bank* v. *Carmichael,* 178 Cal. 446, [173 Pac. 999], this court quoted the above passage from *Coffee* v. *Williams* with approval.   But neither of these cases involved the question whether or not the account as stated must exist in writing.   *Converse* v. *Scott* has not been overruled on this point and we may assume it to be correct.

Turnbull testified that in the conversation with Potter they agreed that the value of the land set off to Potter in the suit should be fixed at seventeen thousand five hundred dollars "for the purpose of fixing the percentage."   The only testimony that tended to show an account stated was given on cross-examination.   He said: "I did not make any statement to him that we would charge him any amount."   He added

that after Potter had assented to the proposal to fix the value of the ranch at seventeen thousand five hundred dollars he said to Potter: " 'That makes $2,750 for those two cases.' We didn't have any words about it at all. We arrived at a figure of $2,750—$1,750 on the basis of ten per cent of seventeen thousand five hundred dollars, plus one thousand dollars which the court had agreed should be allowed to us, and at that time he gave us a check for two hundred dollars and told us he expected one thousand five hundred dollars from his ore shipment and would pay up the balance as soon as he could." Potter denied that any such conversation occurred at any time, and he said that the two hundred dollars was paid because Turnbull told him the firm had been under heavy expenses, that their fees were not coming in and that they needed some money; that the first knowledge he had that plaintiffs proposed to charge ten per cent of the value in addition to the one thousand dollars was on the day before this action against him was begun and that he then vigorously objected to the double charge. But as the finding was against defendant we can consider only the testimony of Turnbull.

We have already seen that the contract did not allow the plaintiffs double compensation for the services in the partition suit, or more therefor than the fee of one thousand dollars therein allowed. For the services in the accounting suit the contract fixed the sum of $37.50 (ten per cent of $375) as compensation. The testimony shows that the value of the personal property divided was not considered or fixed. Even if it had been valued, the value would be immaterial, for the contract gave plaintiffs no right to ten per cent of its value, but only ten per cent in kind for that service. The result is that if the oral account stated is good, it would have the effect of materially altering the written contract in these particulars and it would practically double the amount which plaintiffs would be entitled to recover for the services thereunder. [5] An account stated is a mere unperformed promise by one party to pay a stated sum to another, and it is therefore an executory contract. (Civ. Code, sec. 1661; *Pearsall* v. *Henry,* 153 Cal. 325, [95 Pac. 154].) [6] To allow a written contract to be thus altered by an oral statement of account, or by any statement not agreed to in writing by the debtor, would violate the rule of the code that "a contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." (Civ. Code, sec. 1698.) This

effectually cuts off any such claim in this case. Other reasons now to be stated lead to the same result.

[7] The theory upon which the action on an account stated is allowed is that transactions have occurred between the parties from which the relation of debtor and creditor has arisen, that thereafter one or both have rendered or made statements or declarations specifying definitely the amount due on account thereof and thereupon there has been an agreement, express or implied, by the one who is the debtor, to the other, that a certain sum is due from him on such account, together with an express or implied promise to pay the same. The action is based on the promise to pay thus established, and if it is not expressly made, facts from which such promise will be implied must be proven. Originally, an account stated could exist only where the accounts were mutual, or where there was more than a single item, but in the course of time it became settled that there could be an account stated where but a single item was included or referred to therein. (136 Am. St. Rep. 42, note.)

It was not every debt that could form the basis of such account stated or such action. It could not become a substitute for an action of debt upon a specialty, such as a promissory note or a bond for money. In such cases no subsequent statement of the amount due thereon, although agreed to by the payer, could supersede the special promise so as to form the basis of an action as upon an account stated to recover the original debt. (*Young* v. *Hill*, 67 N. Y. 174, [23 Am. Rep. 99].) The action in such a case must be upon the original promise in writing and not upon account stated. The written promise being higher evidence of the debt, and the debtor being already bound thereby, there could be no necessity for a resort to a subsequent statement and promise to pay as the foundation of an action therefor. Moreover, the debtor being already completely bound for a specified sum, there is no element of uncertainty to be settled, and no difficulty in ascertaining the balance upon conflicting claims, which could constitute a consideration for a new oral promise to pay, and therefore such promise would be a *nudum pactum*. There must always be a consideration to support a valid promise. [8] From this the further rule follows that there can be no account stated where there have been no previous transactions between the parties from which the relation of debtor and creditor could

arise. "It cannot be made the instrument to *per se* create a liability where none before existed." (*Austin* v. *Wilson*, 11 N. Y. Supp. 566; *Stimson Mill Co.* v. *Hughes Mfg. Co.*, 8 Cal. App. 561, [97 Pac. 322].) The case last cited is a good illustration of the proposition just stated. The plaintiff there had sold lumber and delivered it to one Coffey, and, claiming that it was really sold to the defendant, had thereafter rendered accounts therefor to the defendant as the debtor therefor, which defendant had kept for a long time without making any objection thereto, or any denial of its liability therefor, thus raising the inference that it acquiesced therein. In fact the lumber had been sold to Coffey and not to defendant and defendant was in nowise liable therefor, unless upon account stated by reason of acquiescence in the aforesaid statements rendered to it. The court held that such "itemized statements could not be made to create an indebtedness." As an illustration of the proposition first stated there is the case of *Jasper Tr. Co.* v. *Lamplin*, 162 Ala. 388, [136 Am. St. Rep. 33, 24 L. R. A. (N. S.) 1237, 50 South. 337]. Plaintiff held certain promissory notes of the defendant and long after they had become due had sent to defendant written statements of the amounts due thereon for principal and accrued interest and the defendant had assented to the accuracy of the amounts stated. We quote from the decision at length:

"At an early day in England it was held that where a debt was evidenced by an instrument under seal, a recovery could not be had in an action of *assumpsit*. One reason seems to be that there is no consideration for the new promise, because the party is already bound by the higher evidence of debt to pay, and the court says: 'There must be at least some additional consideration, such as items, for instance, foreign to the articles of agreement, introduced into the account and included within the promise, in order to take the claim founded upon it out of the operation of the agreement or contract under seal; otherwise, the plaintiffs below must be confined to their action of covenant, founded upon the articles of agreement, for the recovery of their claim.' (*Gilson* v. *Stewart*, 7 Watts (Pa.), 100.) It was also decided that 'where a sum of money is secured by a deed, and a balance is struck for the purpose of ascertaining how much remains due thereon, and the obligor admits the correctness of the account and promises to pay it, debt or simple contract on an account stated will

not lie, but the action must be brought on the specialty,' the court saying: 'The defendant is charged with nothing but the money secured by the deed. There is no consideration for the suggested new liability, except the ascertaining how much remains due on the deed. It is a perversion of language to speak of this as an account stated. It is merely a process adopted for the purpose of ascertaining how much of the original debt has been discharged, and all which is really done is to make out to what extent the defendant remains liable upon the deed.' (*Middleditch* v. *Ellis,* 2 Ex. 623.)''

(The case of *Middleditch* v. *Ellis* will be found in 2 Welsby, H. & G., p. 623, and in 154 Eng. Rep., p. 640. The word ''deed'' may mislead the reader who has not the report at hand. What is meant is that the plaintiff held a bond, or note, for the payment of money, secured by a mortgage in the form of a deed.)

The above authorities do not depend on the ancient technical distinctions between the common-law forms of action. [9] They are, as the reasoning shows, founded on the fundamental difference between a mere promise to pay an existing debt made upon no new consideration and a promise to pay it which is founded upon a new consideration, such as further forbearance to which the creditor binds himself by accepting this new promise or by some other valid agreement, or a new promise which has the effect of merging the original obligation and in effect extinguishing it as a living contract. They are clearly applicable to the case at bar, so far as it depends on the alleged account stated. In the first place there was no liability from Potter to the plaintiffs for the services in the partition suit, except for the sum of one thousand dollars. That was ascertained and established by the original written contract. In so far as the so-called account stated attempted to enlarge this liability by the addition thereto of another item consisting of the ten per cent upon the *value* of the land segregated thereby, an item not mentioned in the contract, it would, if enforced, operate to ''create a liability where none before existed,'' which as the authorities state, cannot be done by means of an account stated. In so far as the oral account stated purported to bind Potter to pay more than the sum of one thousand dollars for the services in the partition suit, it was based on no new consideration whatever. There was no promise to pay ten per cent of the value of the segregated land

and hence no necessity for coming to an agreement as to the value for the purpose of fixing the percentage. Therefore, that process could not be a consideration for the new promise. No other consideration.could possibly have existed, and consequently the new promise claimed upon the account stated is a *nudum pactum* and unenforceable, except for the services other than those rendered in the suit for partition.

For these reasons we are of the opinion that the judgment was erroneous.

The judgment is reversed.

Lawlor, J., and Olney, J., concurred.

Hearing in Bank denied.

All the Justices concurred.