[Civ. No. 23598.   Second Dist., Div. One.   May 18, 1959.]

BEULAH E. FOGARTY, Respondent, v. HENRY W. McGUIRE, as Executor, etc., Appellant.

Lester V. Peterman and Wallace J. Manley for Appellant.

Fisk & Tyson and Richard P. B. Tyson for Respondent.

LILLIE, J.—Following the rejection of her claim by defendant executor, plaintiff recovered judgment against the estate on an alleged account stated in the sum of $7,000, less certain credits. The matter was heard by the court sitting without a jury. Defendant executor has appealed from the judgment.

The correctness of plaintiff's statement of facts is conceded. It appears therefrom that plaintiff was employed by decedent Rickard from 1940 or 1942 to 1955, at the latter's grocery store in East Pasadena. Decedent also owned an undivided one-half interest in the building and property where his grocery business was operated. During the entire period of her employment, plaintiff's earnings were retained by the decedent to be accumulated and paid to her in "one lump sum" when the market was sold. The grocery business was closed in January of 1955. Plaintiff subsequently moved to Cottage Grove, Oregon, and commenced negotiations there for the purchase of a farm. This fact was known to decedent. In July of 1955 he issued a check for $3,500 to Esther Whitelaw, plaintiff's sister, who likewise resided in Oregon. On August 20, 1955, the following letter was directed to decedent at his Pasadena address by the assistant cashier of a Cottage Grove bank:

"Dear Mr. Rickard:

"Mrs. Beulah Fogarty has referred me to you in reference to a payment that she is receiving in the amount of $100.00. She informs us that this is a payment she gets for her interest in a super market that is maintained by you in Pasadena, California.

"Would you be kind enough to confirm this to the writer, giving such information as you might deem necessary. Mrs.

Fogarty is applying to us for real estate credit and we are most anxious to complete our files in that regard. . . .

"Thank you very much for your assistance in this matter.

/s/ A. C. Schaefer
Assistant Cashier''

Decedent's reply to the above letter, in his own handwriting, and immediately below the signature of the assistant cashier, was as follows:

"Mr. A. C. Schaefer

"Dear Sir:

"Mrs. Beulah Fogarty receives $100.00 per month and in case the market is sold she will receive $7,000.00.

Very truly yours,
/s/ H. B. Rickard''

Schaefer's letter, with decedent's handwritten reply on the bottom of the page, was returned to Schaefer in an envelope addressed to him and bearing a Pasadena postmark.

Prior to August 20, 1955, decedent had issued several checks to plaintiff. On September 1, 1955, plaintiff purchased a farm in Oregon from Thelma Thieland, who took a second mortgage on the property. Following the sale, decedent drew checks to plaintiff, Mrs. Thieland and the Cottage Grove branch of an Oregon bank. Rickard died on November 13, 1955. The market building was sold by defendant executor on November 9, 1956.

The trial court found that an account was stated at Pasadena by and between Rickard and the plaintiff whereby it was agreed that Rickard was indebted to plaintiff in the sum of $7,000 of which $450 had been paid, leaving a balance due and owing in the sum of $6,550. It was further found that Rickard was the owner of a grocery business at a specified address in East Pasadena and owned an undivided one-half interest in the building and property at such address, it being additionally found that plaintiff performed services for Rickard at his special instance and request and had been paid only a portion of her wages due to Rickard's request that the balance of her compensation be allowed to accumulate.

Defendant admits that his testator and plaintiff had carried on previous transactions of a monetary nature, but contends on this appeal that an account was not stated by the letter, and the reply thereto, of August 20, 1955. Asserting that to establish such an account there must be an agreement between the parties, that is, an express or implied promise to pay a sum certain, he argues that the communications in

question lack the essentials of a contract in that there was no *offer* by the decedent which met with plaintiff's *acceptance,* and that the additional element of *mutuality* was also absent by failure to prove that plaintiff agreed to the balance of $7,000 then assertedly struck. In this connection he advances the claim that the bank was not acting as plaintiff's agent but was merely an independent third party seeking information for its own particular benefit.

■ "The theory upon which the action on an account stated is allowed is that transactions have occurred between the parties from which the relation of debtor and creditor has arisen, that thereafter one or both have rendered or made statements or declarations specifying definitely the amount due on account thereof and thereupon there has been an agreement, express or implied, by the one who is the debtor, to the other, that a certain sum is due from him on such account, together with an express or implied promise to pay the same" (*Bennett* v. *Potter,* 180 Cal. 736, 745 [183 P. 156]).

■ "The action upon an account stated is not upon the original dealings and transactions of the parties. . . . It is upon the new contract by and under which the parties have adjusted their differences and reached an agreement" (*Gardner* v. *Watson,* 170 Cal. 570, 574 [150 P. 994]). ■ Such an agreement need not necessarily be in writing (*Bennett* v. *Potter, supra,* 743; *Ahlbin* v. *Crescent Coml. Corp.,* 100 Cal.App.2d 646, 647 [224 P.2d 131]); but if in writing, it should appear to be something more than a mere memorandum and should show with clearness and certainty that it was intended to be a final settlement up to date (*Coffee* v. *Williams,* 103 Cal. 550, 556 [37 P. 504]). ■ Whether these conditions exist is usually a question to be determined by the trier of fact from all the circumstances of the case (*Kinkle* v. *Fruit Growers Supply Co.,* 63 Cal.App.2d 102, 114 [146 P.2d 8]), and in reaching that determination reasonable inferences can be drawn in support of the claim of either party if there is any credible evidence warranting such action. (*Kinkle* v. *Fruit Growers Supply Co., supra,* 115.)

■ Preliminarily, much of appellant's argument is based on the premise that the trial court erroneously applied the law to proven facts and that the question here is solely one of law. But the rule we are asked to apply necessarily means that there must be no conflicting inferences which the trial judge could have drawn (*Export Leaf Tobacco Co.* v. *County of Los Angeles,* 89 Cal.App.2d 909, 916 [202 P.2d 622]);

hence, in order that it may be said that there is no conflict in the evidence and that the trial court's finding was a conclusion of law, appellant must demonstrate that no inference can reasonably be drawn from the evidence other than that contended for by him.

Although objections to respondent's competency as a witness under the dead man's statute were sustained (Code Civ. Proc., § 1880, subd. 3), there is evidence in the record which points to the fact that Rickard and respondent had orally struck some balance (upon which an action might have been brought) as early as January of 1955 when the grocery business ceased to operate. At that time decedent told a mutual friend that respondent would be paid in "one lump sum" upon the sale of the building. ██ Respondent subsequently took up residence in Oregon; her plans for the purchase of a farm in that state were known to decedent who wrote on August 15, 1955, as follows: "On your property we had better pay $100 a month plus int. until we can due better. Please let me know what the int. will be." There then follows the letter from Schaefer only five days later. A reading of the communication persuades us that it falls short of the requirement that the amount due must be specified or there must be a reference to something by which the amount due can be definitely and specifically ascertained (*MacLaren* v. *Gilbert*, 111 Cal.App. 198, 201 [295 P. 349]). No mention was made of the pending sale of the building, which could have made the letter sufficiently specific, and of course the claimed total balance was not referred to.

██ However, and contrary to the first of appellant's contentions, the offer to strike a balance need not come from the creditor but may be made by the debtor (*Bennett* v. *Potter, supra,* 180 Cal. 736, 745). As declared in that case, where the relation of debtor and creditor has arisen between the parties, "one or both" may render a statement specifying the amount due and an account is stated when the other party expressly or impliedly assents. The language used by the decedent speaks for itself. He might have said: "I have received your letter. When I sell the building, I will be in a position to pay Mrs. Fogarty what I then determine I owe her." Although not required to do so, however, he answered in unequivocal terms and struck the balance then and there owing to respondent. Under the circumstances at bar, such a construction does not seem strained or unwarranted. ██ As stated in *Meyers* v. *Nolan,* 18 Cal.App.2d 319, 322 [63 P.2d

1216] : "The law does not favor the destruction of contracts because of uncertainty but will, if feasible, so construe contracts as to carry into execution the reasonable intentions of the parties if they can be ascertained." In actions of the present kind, where the dead man statute is applicable, the foregoing pronouncement is peculiarly pertinent.

But, appellant contends, respondent did not and could not consent to the striking of such a balance because it was not made to her directly. While there is authority that declarations to a third person do not constitute evidence of an account stated (Williston on Contracts, rev. ed., § 1862), it seems apparent that Schaefer was more than an independent third party. He plainly communicated with decedent for and on behalf of respondent, as well as his bank; furthermore, it can be inferred from his letter of August 15 that decedent knew of respondent's dealings with that institution. We hold that Schaefer could properly be deemed to have been acting as respondent's agent, and notice to him was therefore notice to respondent. Appellant's reliance on *Parker* v. *Merchants etc. Co.*, 44 Cal.App. 214 [186 P. 192], is misplaced, since there the alleged creditor did not know that negotiations for the settlement of her account were in progress.

Finally, assent to the account is inferable from her subsequent conduct in accepting checks from decedent up to the time of his demise and otherwise failing to register her objection. If acquiescence for an unreasonable time may constitute assent by the debtor, conversely the same rule is applicable to the creditor. (*Cf. Meyers* v. *The Texas Co.*, 6 Cal.2d 610, 617 [59 P.2d 132].) The length of such time is dependent on the circumstances of each particular case (1 Cal.Jur.2d 382-383).

The complaint alleged and the trial court found that the account was stated at Pasadena, the trial court presumably being of the view that Schaefer's letter constituted an offer by respondent and that decedent's reply represented his acceptance. This erroneous finding does not require a reversal. A contract action may be tried either in the county where the contract was made *or* in the county where the defendant resides (Code Civ. Proc., § 395), and there is no question about the residence of the defendant executor (*cf. Beltaire* v. *Rosenberg*, 129 Cal. 164 [61 P. 916]). The trial court is directed to make such modifications in its findings as will conform to the views herein expressed.

Finally, the judgment erroneously fails to provide for the payment thereof in due course of administration (Prob. Code, § 730). The judgment is modified by adding the words "payable in due course of administration" to be inserted after the figure $6,550, and, as so modified, the judgment is affirmed. The respondent to recover costs.

White, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 15, 1959.