Filed 7/25/22 Soheyly v. Trenk CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| MORTEZA SOHEYLY et al., | B316782 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 21STCV25033) |
| v. | |
| JOSEPH TRENK, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Terry A. Green, Judge. Affirmed.

Burgee & Abramoff and John G. Burgee for Plaintiffs and Appellants.

Joseph Trenk, in pro. per., for Defendant and Respondent.

_____

Morteza Soheyly and Miryam Soheili (Appellants) appeal from a dismissal order following the trial court's ruling sustaining the demurrer of respondent Joseph Trenk without leave to amend. The trial court concluded that Appellants' claims for breach of contract and common counts are barred by the statute of limitations.

We have considered the dispute between the parties once before. Both this lawsuit and a previous action arose from the settlement in 2003 of a legal malpractice action that Appellants had filed against Trenk. As part of that settlement, Trenk provided Appellants with a note promising the payment of money over time, and agreed to secure the note with a trust deed on his house. Trenk stopped regular payments on the note in 2003 and made only one additional payment in 2017 after Appellants had demanded their money. Trenk then filed a quiet title action seeking to void the trust deed on the house (the Quiet Title Action).

In *Trenk v. Soheili* (2020) 58 Cal.App.5th 1033 (*Trenk*), we affirmed the trial court's judgment quieting title in the house in Trenk's favor. We held that the trust deed was voidable because the house was community property and Trenk's wife had not executed the deed.

Following that decision, Appellants filed this action seeking to enforce the note. The trial court ruled that the statute of limitations had run on the note despite the 2017 payment.

We affirm. The four-year time period to bring an action on the note had long since expired at the time Trenk made the 2017 payment. Under Code of Civil Procedure section 360, which controls here, that payment therefore could not revive Appellants'

claim.[1]  Nor could it create a new obligation, which required a promise "contained in some writing."  (§ 360.)  Appellants' complaint identified no such writing, and Appellants have not made any showing that the complaint could be amended to allege such a writing.  The trial court therefore properly sustained Trenk's demurrer without leave to amend.

## BACKGROUND

### 1.    Appellants' Allegations

Appellants' complaint alleges that Appellants settled a legal malpractice action against Trenk in 2003 for the amount of $100,000 to be paid over a three-year period.  Pursuant to the written settlement agreement (Settlement Agreement), which Appellants attached to their complaint, Trenk promised to pay $10,000 upon execution of the agreement and $2,500 per month over the next 36 months, beginning in May 2003.  The payment obligation was also evidenced by an "Installment Note" executed by Trenk (Note).  The obligation was secured by a deed of trust on Trenk's residence (Trust Deed).

Trenk made the initial payment of $10,000 and six subsequent payments of $2,500 each, but then "ceased making payments after December 2003."  Appellants allege that they contacted Trenk in or about October 2017 to demand payment.  In response, Trenk "offered to resume payments and made a payment of $2,500 in October 2017."  Appellants also claim that Trenk "offered to pay the outstanding principal balance due on January 5, 2018 (without interest), further acknowledging his debt."  However, Trenk made no further payment and Appellants

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure.

3

"began to foreclose" on the Trust Deed. In response, Trenk filed his Quiet Title Action.

The complaint asserts two causes of action for breach of contract and one cause of action based on "common counts."

## 2. Procedural History

In the Quiet Title Action, Trenk obtained a judgment invalidating the Trust Deed. The facts and issues in that action are described in our opinion in *Trenk*, and we therefore do not repeat them here.

On appeal from the judgment in that action, we affirmed the trial court's ruling canceling the Trust Deed on the ground that Trenk's wife had not executed the deed. (*Trenk, supra,* 58 Cal.App.5th at p. 1049.) We did not decide the question of whether the statute of limitations had run on the obligation created by the Note because we concluded that issue was irrelevant to the validity of the Trust Deed. (*Id.* at p. 1049, fn. 11.) We explained that we left "the question whether the Note is enforceable for future determination in the event that Appellants attempt to collect on the Note as an unsecured debt." (*Ibid.*)

Appellants then made such an attempt by filing this action on July 7, 2021. Trenk filed a demurrer raising the defenses of res judicata and the statute of limitations.

On September 24, 2021, the trial court sustained the demurrer without leave to amend. The court rejected Trenk's res judicata arguments. With respect to the doctrine of claim preclusion, the court concluded that the judgment in the Quiet Title Action did not bar Appellants' causes of action in this action because Appellants' causes of action based on the Note are different from the claim at issue in the Quiet Title Action that the Trust Deed was unenforceable. With respect to the doctrine of

4

claim preclusion, the court concluded that, in light of this court's opinion in the Quiet Title Action, the issue of the statute of limitations on the Note had not been finally adjudicated in that action.

However, the trial court ruled that the four-year statute of limitations set forth in section 337 had run on the obligation created by the Settlement Agreement and the Note. The court found that the statute began to run on the date of the contract breach, "which in this case would be the first missed payment." Thus, the statutory period expired "no later than the end of 2007."

The court rejected Appellants' argument that Trenk's 2017 payment extended the statutory time period. Citing section 360 and the decision in *Kaichen's Metal Mart, Inc. v. Ferro Cast Co.* (1995) 33 Cal.App.4th 8, the court reasoned that, absent a written agreement, a payment on a promissory note can restart the time period for filing a claim under the statute of limitations "*if and only if* the statute has not yet fully run." Because the statute of limitations had already run by the time of Trenk's 2017 payment, the court concluded that Trenk's debt could be collected only if Trenk had signed a new contract, and "[t]here is no indication that such a new contract exists."

## DISCUSSION

### 1. Standard of Review

An order sustaining a demurrer is reviewed de novo to determine whether the complaint states a cause of action as a matter of law. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.) On appeal, we " 'treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions

5

or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

In determining whether a complaint states a cause of action, its allegations "must be liberally construed, with a view to substantial justice between the parties." (§ 452.) The complaint must be given "a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank, supra,* 39 Cal.3d at p. 318.) A demurrer should not be sustained " 'when the plaintiff has stated a cause of action under any possible legal theory.' " (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810, quoting *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

When a trial court sustains a demurrer without leave to amend, the court's decision not to permit further amendment is reviewed for abuse of discretion. (§ 472c, subd. (a); *Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 947.) If the complaint does not state facts sufficient to constitute a cause of action, the appellate court must determine whether there is a reasonable possibility that the defect can be cured by amendment. (*Ellenberger*, at p. 947.)

## 2. Appellants' Breach of Contract Claim Is Untimely

Appellants do not dispute that their first cause of action for breach of contract is barred by the statute of limitations. That cause of action is based upon the original Settlement Agreement and Promissory Note, which were executed in 2003. Appellants' claim accrued in 2004 when Trenk breached these agreements by failing to make required payments. (See *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 966 [breach of contract claim accrued upon failure to make payments at the

6

contractually required time].)  Even if the Settlement Agreement and Promissory Note created a severable contract, with each scheduled payment as a separately enforceable obligation, Appellants' claim expired in May 2010, four years after the date for the last scheduled payment. (*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1388 ["where performance of contractual obligations is severed into intervals, as in installment contracts, the courts have found that an action attacking the performance for any particular interval must be brought within the period of limitations after the particular performance was due"].)

Appellants defend only the breach of contract claim that they allege in their second cause of action.  Appellants argue that claim is viable because it is based on an alleged *new* contract that was formed in 2017 when Trenk agreed to honor his debt and made one additional payment.  The fatal problem with this theory is that Trenk's promise to pay was not made in a new writing.

Section 360 requires such a writing.  That section governs the effect of an "acknowledgment or promise" on the running of the statute of limitations.  It provides that no such acknowledgment or promise "is sufficient evidence of a new or continuing contract" sufficient to avoid the bar of the statute of limitations "unless the same is contained in some writing, signed by the party to be charged thereby."  This requirement is modified by a proviso that a payment on a promissory note in the case of a "continuing contract" may start a new statutory period.  However, as the trial court correctly recognized, and as Appellants acknowledge on appeal, this proviso applies only when the statute of limitations has not yet run.  That limitation

7

is perfectly clear from the last clause of the section, which provides that no payment "of itself shall revive a cause of action once barred." Section 360 therefore requires proof of a *written* promise to create a new contract based on a prior debt.

Appellants claimed at oral argument that the parties created an entirely new oral contract as a result of Trenk's alleged promise to pay the prior debt, supported by the consideration of Appellants' forbearance in enforcing the Trust Deed. Appellants claim that this new oral agreement, combined with the 2017 payment, takes Trenk's promise out of the scope of section 360.

The argument cannot be reconciled with the plain language of section 360. The first sentence of that section provides in relevant part that "[n]o . . . promise is sufficient evidence of a *new* . . . contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby." (Italics added.) We need not consider whether there might be some circumstance in which a debtor could enter into a new oral contract with new rights and responsibilities that would take the debtor's promise outside the scope of section 360. Appellants do not allege, nor do they argue, that they entered into some entirely new contractual relationship with Trenk of which their promised forbearance in foreclosing on the Trust Deed was only a part. Rather, they allege that "Trenk's offer to resume payments and the payment made in October 2017 constitutes an acknowledgment of his debt to Plaintiffs." Their claim is that Trenk entered into a new agreement to pay his preexisting debt. To be enforceable under section 360, such an agreement had to be in writing.

Appellants did not allege any such written agreement in their complaint. Appellants claimed only that when they contacted Trenk in October 2017 to demand payment, "Trenk offered to resume payments and made a payment of $2,500.00 in October 2017." Their allegation that Trenk "offered to pay the outstanding principal balance due on January 5, 2018 (without interest)" is similarly general. The complaint does not allege that these promises to pay were memorialized in any writing.

Appellants also do not identify any such written agreement on appeal. Instead, citing the broad definition of a "writing" under section 250 of the Evidence Code, Appellants claim that Trenk's October 2017 payment *check* satisfied the requirement for "some writing" under Code of Civil Procedure section 360.

Trenk's October 2017 check was not sufficient to satisfy the requirement of a written promise under section 360 for two reasons. First, while the check might constitute a "writing" signed by Trenk, it does not satisfy the further requirement that Trenk's "acknowledgment or promise" be "contained in" the writing. (§ 360.) Section 360 plainly requires that the promise itself be written. The check was simply a payment and did not itself include any written promise other than a commitment to honor the check.[2]

---

[2] The evidentiary importance of the requirement for a *written* promise to support a new agreement to pay a time-barred debt is apparent from the allegations in this case. Appellants allege that Trenk promised to pay the outstanding principal on January 5, 2018, but "without interest." There is no allegation that Appellants accepted this offer, and they later filed suit seeking the principal amount along with "at least $126,000.00" in

Second, Appellants' argument that a check paying a portion of a time-barred contractual obligation can create sufficient written evidence of a new enforceable promise is inconsistent with the language of section 360.  As mentioned, the last clause of that section expressly states that "no such payment [on a promissory note] of itself shall revive a cause of action once barred."  Appellants' interpretation would, in effect, create an exception to this rule if such a payment is made by a signed check rather than through some other payment method.  There is no legal or logical reason to read such an exception into the plain language of section 360.

Appellants' breach of contract claim is therefore time-barred.

### 3.    Appellant's Third Cause of Action Does Not State a Timely Claim for Relief

Appellants' third cause of action is styled as a common counts claim.  The term "common counts" does not identify a particular cause of action, but is simply a pleading device.  " 'A common count is not a specific cause of action . . . rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness.' " (*Korchemny v. Piterman* (2021) 68 Cal.App.5th 1032, 1047–1048, quoting *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394.)  This means that " '[w]hen a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of

---

prejudgment interest.  Thus, from the allegations in the complaint it is not even clear that there was an *oral* agreement on the terms of repayment.  A written agreement is less likely to suffer from such uncertainty.

10

action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable.' " (*Ibid.*) Thus, to the extent Appellants' common counts claim is based upon an alleged breach of contract, it is untimely for the same reason as their second cause of action.

Appellants' complaint refers to two other possible theories of relief. Appellants' third cause of action alleges that Trenk's "January 2018 offer to pay the principal balance constituted an account stated between the parties that money was owed by Defendants to Plaintiffs." It also alleges that "the settlement terms established an open book account pursuant to which Defendants made payments applicable to reduce their debt to Plaintiffs." Neither theory will support a timely claim.

Appellants' "account stated" theory fails for two separate reasons. First, the complaint does not state such a theory. An "account stated" refers to the agreement that is formed when parties resolve a dispute over the amount of a debt that is owed and one party agrees to pay a specific sum. (See *Fogarty v. McGuire* (1959) 170 Cal.App.2d 405, 409.) In contrast, when the obligation to pay a specific amount arises from "a specialty, such as a promissory note . . . no subsequent statement of the amount due thereon, although agreed to by the payer, can supersede the special promise so as to form the basis of an action as upon an account stated to recover the original debt. The written promise being higher evidence of the debt and the debtor being already bound thereby, there could be no necessity for a resort to a subsequent statement and promise to pay. Moreover, the debtor being already completely bound for a specified sum, there is no element of uncertainty to be settled, and no difficulty in ascertaining the balance upon conflicting claims, which could

11

constitute a consideration for a new promise to pay, and therefore such promise would be a *nudum pactum*." (*Rio Linda Poultry Farms v. Fredericksen* (1932) 121 Cal.App. 433, 435–436, citing *Bennett v. Potter* (1919) 180 Cal. 736, 738–745.) Thus, where, as here, a party simply promises to pay an already existing debt that was created by an express contract, there is no "account stated" forming a new contract.

Second, even if Trenk's alleged promise to pay the amount that he owed constituted a new contract, it did not meet the requirements of section 360. Section 337, which describes the four-year statute of limitations applicable to written contracts, also specifically applies to actions to recover upon a "book account" and "an account stated based upon an account in writing." (§ 337, subd. (b).) Subdivision (d) of section 337 states that the "period in which an action may be commenced under this section shall only be extended pursuant to Section 360." Thus, the requirement in section 360 of a *written* agreement establishing a new contract to pay a debt also applies to claims based upon an account stated and an open book account.

Appellants' theory that Trenk's debt was based on an open book account fails for similar reasons. A book account is what the name suggests. As defined in section 337a, it is a "detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith . . . and is kept in a reasonably permanent form and manner," such as a bound book or other permanent form. Thus, the term typically refers to a record of transactions in an ongoing financial relationship. Importantly, absent an agreement, the concept cannot be applied to an

12

obligation created by an express contract with a fixed payment date to which the statute of limitations applies. "It seems to be well settled that monies which become due under an *express* contract (such as rent due under a lease) cannot, *in the absence of a contrary agreement between the parties,* be treated as items under an open book account so as to allow the unpaid creditor to evade or extend the statutory limitations period." (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1343–1344, citing, inter alia, *Parker v. Shell Oil Co.* (1946) 29 Cal.2d 503, 507.)

Moreover, section 360 would apply to any such agreement. As mentioned, the four-year statute of limitation in section 337 also applies to a "book account," and the statutory time period may therefore be extended only as permitted under section 360. (§ 337, subds. (b) & (d).) And section 360 requires a writing to evidence both a "new *or continuing* contract." (Italics added.) Thus, Appellants' "book account" theory requires a written agreement showing that Trenk's 2017 payment was based upon a continuing obligation. Appellants have not alleged such a written agreement.

### 4. The Record Does Not Show Any Possibility of an Amended Complaint Alleging a Timely Claim

"The issue of leave to amend is always open on appeal, even if not raised by the plaintiff." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746.) However, "[t]he plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

Although Appellants assert that the trial court should have granted leave to amend, they do not explain how they could

13

amend their complaint to state a timely claim. As discussed above, any such amendment would need, at a minimum, to include an allegation of a *written* agreement by Trenk evidencing a new or continuing obligation to pay on the Note. Appellants' factual allegations do not identify any such written agreement. Nothing in the record or in the argument on appeal suggests that one exists. Under these circumstances, the trial court did not abuse its discretion in denying leave to amend.[3]

---

[3] In light of our disposition, we do not reach Trenk's alternative contention that Appellants' claims are barred under res judicata principles. Trenk's argument that collateral estoppel, or issue preclusion, applies to Appellants' statute of limitations argument depends upon a showing both that the issue was actually litigated and finally decided. (See *Samara v. Matar* (2018) 5 Cal.5th 322, 326–327.) Both aspects of this showing are questionable in light of our prior opinion in *Trenk*, which expressly left open the question of the enforceability of the Note for "future determination," because deciding that question was not necessary for the holding and the parties did not need to fully litigate the issue. (See *Trenk, supra,* 58 Cal.App.5th at p. 1049, fn. 11; see also *Parkford Owners for a Better Community v. Windeshausen* (July 14, 2022) 2022 Cal.App.LEXIS 619 at *15 ["A trial court judgment determined to be moot on appeal and dismissed has not been fully litigated, as appellate review of the merits was never completed"].) Trenk's argument that claim preclusion applies to bar this action raises other complex questions. Trenk's argument is based on the proposition that Appellants' claim on the Note was a compulsory counterclaim in his Quiet Title Action seeking to invalidate the Trust Deed. The proposition is far from clear in light of the "one form of action rule," which requires a creditor to elect whether to sue on a note or foreclose under a trust deed securing the note, and may result

# DISPOSITION

The judgment is affirmed.  Trenk is entitled to his costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.

---

in waiver of the security if the creditor elects to sue on the note. (See § 726; *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 997.)  Because Appellants' claims are clearly time barred, we need not decide these procedural questions.