WILLIAM A. BURRITT V. WILLIAM VILLENUVE.

*Account stated.*

An attorney who had been paid $50 on account of services
rendered and to be rendered, on being afterwards asked by
his client how much he owed him, replied that, if the client
paid him $50 in cash, he would call the account square, and
the client answered that he would pay the money in a few
days. He subsequently made payments which, with the $50
payment, made a total of $98.10. And it is held that it was
a question for the jury whether it was understood between
the parties that the account was stated, and whether the
entire amount found due on the settlement had been paid,
less $1.95 (the sum for which the attorney had taken judg-
ment on *ex parte* proceedings in justice's court), which under-
standing would bind the attorney, in the absence of fraud or
mistake.

Error to Clare. (Aldrich, J.) Submitted on briefs
May 13, 1892. Decided June 10, 1892.

*Assumpsit.* Defendant brings error. Reversed. The
facts are stated in the opinion.

*Browne & Cummins,* for appellant.

*W. A. Burritt,* in *pro. per.*

MONTGOMERY, J. This cause originated in justice's
court. The plaintiff is an attorney, and brought this
action to recover for professional services. The proceed-
ings in justice's court were *ex parte,* and judgment was
rendered for $1.95 upon evidence furnished by the
plaintiff. On appeal the case was tried by a jury, and
a verdict of $101.90 was rendered for the plaintiff. The
defendant brings error.

The items of service charged were for representing

the defendant on a trial for murder, and for defending him in a case wherein he was charged with violating the liquor law. The plaintiff claimed on the trial at the circuit that the services in the liquor case were worth $50, and the services in the murder case $150, and admitted having received $98.10. The defendant had paid plaintiff $50 before the services were all rendered.

The plaintiff testified that after the services were performed, and on the same day as the trial of the murder case, defendant asked him how much it needed to square the account, and said:

"If I pay you $50 more, that ought to make us square."

And plaintiff further testified:

" Well, I said to him if he wanted to give me $50 more in cash, 'inasmuch as you have pleaded guilty in the liquor case, and have this fine to pay and everything, if you want to pay me $50 in cash I will call it square.' He says, 'I haven't got it to-day.' I says, 'You can get money as well as I can.' He said he had got his tax to pay, and he says, 'In a few days I will pay you the other.' It ran along, I don't know how long, but quite a while, before he ever paid me any more, and then he paid me $23.30, and the other ran along, and he didn't pay it. Subsequently he paid enough to make $98.10. He afterwards said he wouldn't pay any more at all, and I sued him."

The court submitted to the jury the question of whether there was a settlement, and instructed them that—

" If you find from the evidence that the plaintiff agreed to take a certain amount in settlement of his claim, and that this amount was not paid, then he would not be bound by the amount he agreed to take in settlement of the claim. Where a person holds an account against another, and if the other disputes his account, he may make overtures of settlement to him, and may offer to take less than he considers to be his due; and if the other person does not agree to pay it, does not accept it as a true statement of the account between them, then it does

not bind the person who has given that as his account, but he would be entitled to what his services would be reasonably worth."

While the instruction as to the effect of the proposition to settle is technically correct, we think it clear, from a reading of the plaintiff's testimony, that it was a question for the jury as to whether it was understood between the parties that the account between them was stated, and whether the entire amount found due on such settlement had been paid, less $1.95. This understanding, if found, should bind the plaintiff, in the absence of fraud or mistake.

This is not like the case of *Romeyn v. Campau,* 17 Mich. 327, cited by counsel. In that case there was no meeting of minds. There was simply a rendition of account, which was not accepted by defendant, and it was properly held that this was no settlement. But in the present case it is inferable from the testimony that both parties understood that the account was agreed upon, and that credit was extended, and payments were subsequently made upon the account. In such a case, to permit the plaintiff to ignore a settlement, or rather agreement as to the value of his services, is to visit a penalty upon the defendant for his failure to discharge a debt, the amount of which has been agreed upon, and to allow plaintiff to recover a sum in excess of the agreed price for his services. In *Rayburn v. Lumber Co.,* 57 Mich. at page 275, it is said:

"We think, also, that where an account is presented at a certain expressed rate of charges for work, to obtain payment or advances, and money is actually advanced upon it at those rates, it is not competent thereafter to increase those charges, unless on clear proof of mistake, or other definite equity of recognized sufficiency."

The fact that the plaintiff took judgment for $1.95 is strong evidence that he understood that the value of his services had been determined by agreement.

The judgment will be reversed, with costs, and a new trial ordered.

The other Justices concurred.