[S. F. No. 2827.    Department One.—September 10, 1902.]

EMMA C. CONVERSE, Appellant, v. PAULINE A. SCOTT, Respondent.

ACCOUNT STATED—ORAL AGREEMENT—WRITING NOT REQUIRED.—Where a balance of accounts was orally agreed upon between the parties it became an account stated, and was not required to be in writing. The fact that a typewritten copy of the agreement was prepared, but not executed, cannot affect the validity of the account stated.

ID.—ACTION UPON ACCOUNT STATED.—An account stated is a new and independent contract, upon which an action is properly based. It is unnecessary to go back of it to inquire whether it was based on figures written on a piece of paper or carried in the memory.

ID.—NONSUIT—ERROR OF LAW—BILL OF EXCEPTIONS—REVIEW UPON APPEAL.—Error in the granting of a nonsuit which is excepted to may be embodied in a bill of exceptions on motion for a new trial, and may be reviewed, either upon appeal from the order denying a new trial, or upon appeal from the judgment based on the order of nonsuit.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion.

Mullany, Grant & Cushing, for Appellant.

Sullivan & Sullivan, for Respondent.

GRAY, C.—This action is brought by the mother of Henry C. Converse on an account stated between said Henry and another son of plaintiff, named Albert E. Converse. The account is alleged to have been stated between the brothers on August 30, 1898, and evidenced an indebtedness from Albert to Henry of fifteen hundred dollars. Henry died intestate on January 16, 1899, and the plaintiff, as his sole heir, succeeded to the claim against Albert. Albert also died on February 21, 1899, and the defendant herein was his surviving widow (since married again), and is administratrix of his estate. At the trial of the case before a jury the court nonsuited plaintiff at the conclusion of the evidence, on the sole ground that she had failed to show an account stated between the two brothers. The plaintiff appeals from the judgment following the nonsuit and from an order denying her a new trial. The evidence as to the account stated is without substantial conflict, and may be summarized as follows: Albert and Henry, with their respective attorneys and a stenographer, met at the office of one of the attorneys on August 30, 1898, for the purpose of transacting some business. Immediately after this business was transacted Henry said to Albert: "There is now another matter. You owe me

about $2,500 or more, and I want some arrangement made in regard to that.'' Albert said he did not think it was as much as $2,500. Henry said that he could show him the items of the account; that it was somewhere among his papers. He said: "If you dispute the account let it go. I don't care whether you call it anything or not." And Albert said: "No, I won't do that, because I do owe you considerable money, but I do not think it is as much as $2,500." Henry said: "It is more than $2,500 and nearer $3,000, but I will call it $1,500 if you like." Albert said: "No, I know it is more than $1,500; I want to pay you what I owe you; I would rather wait and find out the exact amount." Then Mr. Rogers, attorney for Albert, said in the presence of all to Albert: "Are you satisfied that it is as much as $1,500 or more?" And Albert said: "Yes, I know it is more than $1,500." Mr. Rogers then said to Henry: "Are you willing to take $1,500?" And Henry said: "Yes, I will call it $1,500 to make it square." So Mr. Rogers said to Albert: "Better settle it now at that figure." And they agreed both of them that the debt was fifteen hundred dollars. They orally agreed that they would call it fifteen hundred dollars and settle it then. Mr. Kellogg, the attorney for Henry, then said to both the brothers that this was to be a settlement of all accounts between them; that Albert had nothing against Henry, and Henry had nothing against Albert except the fifteen hundred dollars; and the brothers acquiesced in that statement. During this conversation between the brothers and their attorneys there were no written accounts exhibited, but Henry said to Albert that "it is nearer $3,000 than $2,500; but if you will go down with me and look at the account which I have in the safe deposit I can show you the items." But it appears that Albert waived an inspection of the items, expressed himself as satisfied that the balance due from him to Henry was more than fifteen hundred dollars, and in a perfectly friendly way it was orally agreed between them that the balance in Henry's favor should be treated as fifteen hundred dollars and the account between them settled at that figure. At the conclusion of this conversation, Mr. Kellogg turned to his stenographer and in the presence of the brothers dictated and the same was taken down, word for word, by the stenographer in shorthand as follows:—

CXXXVII. Cal.—16

"Agreement made August thirteenth, A. D. 1898, between Henry C. Converse and Albert E. Converse, witnesseth:

"Whereas, accounts have existed between the parties hereto, and they have come into accord this day as to the condition of such accounts, and it has been agreed and is now agreed between them that the balance of accounts are as follows, to-wit:

"That the said Henry C. Converse owes the said Albert E. Converse nothing;

"That the said Albert E. Converse owes the said Henry C. Converse the sum of fifteen hundred ($1,500.00) dollars, and no more; and in consideration of the premises, the said Albert E. Converse has to pay the said Henry C. Converse the sum of fifteen hundred ($1,500.00) dollars one day after date, without interest;

"And each party declares that the foregoing is a full settlement of all matters between them, and that no accounts other than above stated exist for or against either of them.

"Witness the hands of the parties hereto, the day and year first herein written."

These shorthand notes were on the following day type-written, and Kellogg forwarded the document thus typewritten to Rogers for Albert's signature, but it was never signed by either of the brothers, and both of them died within six months thereafter. There was never any dissent expressed as to the dictated language of the settlement, though both brothers were present at the time, and also Kellogg met Albert some time after the contract was sent to Rogers and asked him about the signing of it. It also seems from the testimony of the stenographer, Jennie Downer, that the brothers expressly assented to the correctness of the contract after it was dictated. Evidence of the stenographer as to the matter dictated to her by Kellogg, the copy of which is hereinabove set out, was on the objection of respondent excluded and not permitted to be put in evidence; and in this we think the trial court erred. This evidence was not intended to establish a written promise or contract, but was intended to corroborate the other testimony as to the oral agreement, and it tended to make the evidence more specific and certain as to just what the oral agreement was.

We also think that the foregoing facts disclose all the essen-

tial elements of a contract between Albert and Henry, and
that such contract was one of settlement of all accounts pre-
viously existing between them; and no better name occurs to
us to call such a contract by than that of an account stated.
We are cited to no statute of frauds or decisions in this state
requiring an account to be stated in writing in order to bring
it within the definition of an ''account stated.'' No such thing
is held in *Coffee* v. *Williams,* 103 Cal. 550, nor was any such
question involved in that case. The statute of our state ex-
pressly declares that ''All contracts may be oral, except such
as are specially required by statute to be in writing.'' (Civ.
Code, sec. 1622.) We have no statute requiring the contract
known as an account stated to be in writing. Indeed, it is
expressly conceded by respondent herein that the account need
not be stated in writing, or, in other words, that the balance
due may be acquiesced in or agreed to by parol, and that the
agreement to pay the balance struck need not be in writing.
(*Auzerais* v. *Naglee,* 74 Cal. 67; *Kahn* v. *Edwards,* 75 Cal.
192;[1] *Baird* v. *Crank,* 98 Cal. 293.) But it is earnestly con-
tended by respondent that this oral agreement must of neces-
sity be based upon some writing evidencing transactions
between the parties to the account. But we ask why ''of
necessity'' must this be so? Accounts between parties some-
times exist without any memorandum or other written evi-
dence of them. Can it be that such accounts are incapable of
being incorporated into an account stated between the parties?
The very essence and body of an account stated is the striking
of the balance and the agreement to pay it. If this can all be
done orally, how is it material that anything back of that
should be in writing? If the oral agreement as to the balance
due and the promise to pay it are undisputed and free from
fraud, you cannot go behind them to ascertain whether the
accounting was correct or not. (*Auzerais* v. *Naglee,* 74 Cal.
67.) The account stated is a new and independent contract,
and the whole action is based upon that contract. Then why
should we go back of it to ascertain whether it is based on
figures written on a piece of paper or on figures carried in the
memory? If A sells on credit and delivers to B a horse, a
sack of potatoes, and a cow, he immediately has an account
against B for their price, and he continues to have that ac-

---

[1] 7 Am. St. Rep. 141.

count against B until it is extinguished by payment or otherwise, whether he makes any memorandum of it or not; and this account, though there is no written evidence of it anywhere to be found, may be stated between the parties by an oral agreement as to the whole amount due and an oral agreement to pay the same. (*Pinchon* v. *Chilcoot*, 3 Car. & P. 236; *Knowles* v. *Michel*, 13 East, 249; *Watkins* v. *Ford*, 69 Mich. 361; *Burritt* v. *Villenuve*, 92 Mich. 282; *Goodrich* v. *Coffin*, 83 Me. 324; *Wharton* v. *Caine*, 50 Ala. 408; *Powers* v. *New England Fire Ins. Co.*, 68 Vt. 390.) Each item of an account is usually the result of an executed contract between the parties, and executed contracts are usually binding, whether in writing or not, even though originally required to be in writing; yet when they are executed they are said to be thereby taken out of the statute of frauds. We conclude that an account as well as an account stated may rest in parol, and neither is within the statute of frauds of this state or of any other state or country, so far as we are able to discover from the cases cited to us herein. The early English cases to a contrary effect appear to have been later overruled.

Of course, there is nothing in respondent's contention that the action of the court in granting the motion for a nonsuit cannot be reviewed on an appeal from an order denying a new trial. Granting the motion for a nonsuit was an error of law occurring at the trial, and was excepted to and specified as such, as appears by appellant's bill of exceptions used on the motion for new trial. (*Toulouse* v. *Pare*, 103 Cal. 251.) Besides, we also have before us an appeal from the judgment based on the order of nonsuit. (Code Civ. Proc., sec. 956.)

The judgment and order should be reversed.

Cooper, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

                    Van Dyke, J., Garoutte, J., Harrison, J.