[Civ. No. 4732. Third Appellate District.—February 24, 1933.]

C. B. CALLAHAN, Appellant, v. GENERAL OIL WELL SUPPLY COMPANY (a Corporation), Respondent.

E. P. Peers and Alfred Kehde for Appellant.

Wood & McArthur for Respondent.

BURROUGHS, J., *pro tem.*—This is an appeal by the plaintiff from the judgment in favor of the defendant in an action to partition personal property.

The property sought to be partitioned is certain oil-well drilling equipment. It is alleged in the amended complaint that plaintiff is the owner of an undivided five-eighths interest in said equipment and the defendant owns the remaining interest. The answer denies plaintiff's ownership of any interest in the property, alleges title in defendant and as an affirmative defense pleads estoppel.

The facts necessary to a decision of the questions involved are substantially as follows: The plaintiff herein, one Johnston, and two other men were joint adventurers in the drilling of an oil-well known as Herwig No. 11. Plaintiff and Johnston were interested in buying the equipment described in the pleadings for use in the joint adventure referred to. Said equipment was owned by one Charles F.

Sawyer, but was subject to an option held by this plaintiff to purchase the same for the sum of $800. The property was at the time of the execution of the note and mortgage hereinafter referred to in the yard of the copartnership, herein referred to as the Coast Supply Company.

Lacking the necessary funds to close the option, Johnston informed the plaintiff that he could borrow the sum of $500 from the Coast Supply Company, provided plaintiff would allow him to put a mortgage on said equipment. Plaintiff told him to go ahead. After negotiating with the Coast Supply Company, Johnston informed plaintiff that he could. only borrow the sum of $300 on the equipment and again plaintiff told him to go ahead and that he would put up the balance of $500. On July 12, 1928, Johnston executed in his own name a promissory note in the sum of $2,500 and a chattel mortgage on the said equipment to the Coast Supply Company as security for the payment of said note and he received the sum of $375 from the mortgagee. Of this sum, with the knowledge of the plaintiff, he retained $75 for his own use. In the mortgage thus executed appears the following warranty: ''The said mortgagor does hereby state, declare and warrant, that he is the sole and separate owner of all the within mentioned personal property and that there are no liens or incumbrances or adverse claims of any kind whatever on any part thereof.'' Immediately after the execution of the note and mortgage Johnston took a copy of both of said documents to the plaintiff and delivered them to him, together with the sum of $300. The plaintiff thereupon and with knowledge of the contents of said instruments, purchased the equipment from the owner and took a bill of sale therefor in his own name and in the name of Johnston. They took possession of the property and caused it to be removed to Herwig No. 11, where it was installed and used. Later on it was removed to another well that Mr. Johnston was drilling and still later to another one, where it remained until sold under the decree of foreclosure of the mortgage given by Johnston as aforesaid. After its removal to the property last mentioned the plaintiff posted a notice of nonresponsibility for work being done on the oil-well, in which notice he claimed to be the owner of the mortgaged property, and this notice remained posted until after the sale made pursuant to the decree of foreclosure

of the mortgage. The debt secured by the chattel mortgage not having been paid, the mortgaged property was sold to satisfy the same and the defendant in this action became the purchaser. The plaintiff was present at the sale, but did not assert any claim of title to the property.

Under the foregoing state of the case the court found that the plaintiff was estopped to assert any title to the property in suit. It is this finding that is the subject of attack by the appellant. Section 1962, subdivision 3, of the Code of Civil Procedure, provides: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."

In 10 California Jurisprudence, page 626, it is said: "The whole office of an equitable estoppel is to protect one from a loss which, but for the estoppel, he could not escape. The vital principle of equitable estoppel, it has been said, is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position involves fraud and falsehood, and the law abhors both."

In *Argenti* v. *City of San Francisco*, 16 Cal. 255, and *Sussman* v. *San Luis Obispo Co.*, 126 Cal. 536 [59 Pac. 24], it is held that although the actual representations are made by an agent, the consenting principal is estopped.

In 10 California Jurisprudence, pages 634, 635, it is said that: "Careless and culpable negligence amounting to fraud is equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel."

Section 3543 of the Civil Code reads: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

■ Viewed in the light of the foregoing principles of estoppel, it is clear that this appellant, while holding an option to purchase the property in controversy, agreed that his associate Johnston should place a mortgage on said property to raise money for their joint adventure. Acting upon this permission, Johnston did this very thing, giving the note and mortgage even before either acquired title

thereto, representing himself as the sole owner and guaranteed title in himself. Of these facts plaintiff had full notice and knowledge and accepted the money from Johnston, using it to purchase the property in his own name and that of his associate, but without in any manner giving notice of his own claim of title. When the property was sold to satisfy the mortgage debt, plaintiff was present at the sale and failed to assert any interest or title in the property. We think the foregoing is amply sufficient to sustain the finding of the court. ■ It is claimed by plaintiff that there is no evidence in the record that the mortgagee relied upon plaintiff's conduct in making the loan. True, no witness has testified in so many words that the mortgagee relied upon Johnston's ownership of the property in making the loan, but no other reasonable inference can be drawn from the evidence and conduct of the parties. The fact that the note and mortgage were given with the guarantee of title in Johnston, also the taking of the mortgage before the Coast Supply Company would make the loan, satisfy us that the mortgagee relied upon the title of Johnston.

It does not appear in the record why the note was given for $2,500, nor does it appear, as claimed by appellant, that the property at the time it was mortgaged was in the custody of the Coast Supply Company as bailee or otherwise. It merely appears that at that time it was in one of their yards.

■ Plaintiff is also estopped to deny Johnston's title to the property by accepting benefits under the chattel mortgage with full knowledge of the facts. Section 1589 of the Civil Code provides: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."

Without repeating the facts as above set forth, it is undisputed that appellant knew when he accepted the money loaned to Johnston by the Coast Supply Company and used it to assist in purchasing the oil-well equipment for the benefit of their joint adventure that the Coast Supply Company had made the loan upon the strength of Johnston's title to the property and he made no effort to enlighten them of any claim held by him. This principle is sustained

in 10 California Jurisprudence, page 645, section 25, where it is said: "But there are other forms of estoppel in which knowledge on the part of the person invoking the estoppel and reliance upon the fact and a change of situation based upon that reliance are not essential. . . . To constitute this sort of estoppel, the act of the party against whom the estoppel is sought must have gained some advantage for himself, or produced some disadvantage to another; the person invoking the estoppel must have been induced to change his position, or by reason thereof the rights of other parties must have intervened." (See, also, secs. 3515, 3516, 3517, 3519 and 3521, Civ. Code.)

■ Appellant also contends that he is not estopped because his title to the property was acquired after Johnston gave the note and mortgage. Appellant cites two California cases: *Gluckauf* v. *Reed,* 22 Cal. 469, and *Marquart* v. *Bradford,* 43 Cal. 526. Both of these cases were decided before the enactment of section 1962 of the Code of Civil Procedure. Further, in the cases cited by appellant, the after-acquired titles were new and independent titles acquired long after the transaction, out of which the estoppel was alleged to have arisen, had occurred. But in the case at bar the after-acquired title grew out of and was a part of the same transaction and fully completed on the same day and cannot be said to be an after-acquired title within the meaning of the cited cases. Furthermore, in the cited cases the holders of the after-acquired titles had not encouraged and directed false representations. ■ Appellant also contends that the only title which can be acquired at a foreclosure sale is the title of the mortgagor. There is no doubt that this is the correct rule, but such rule does not prevent a purchaser at such sale, in a proper case, to invoke the doctrine of estoppel.

The decision of the trial court is eminently just and fair and the judgment must be affirmed. It is so ordered.

Thompson, J., and Plummer, Acting P. J., concurred.