[Civ. No. 9838.  First Appellate District, Division One.—August 4, 1936.]

E. FLESCHLER, Respondent, v. JOSEPH B. STRAUSS, Appellant.

Henry C. Clausen for Appellant.

Fred McDonald for Respondent.

KNIGHT, J.—The trial court found from the evidence in this case that the defendant Joseph B. Strauss was indebted to plaintiff in the sum of $5,000 on an assigned account stated. Judgment was entered accordingly, and defendant appeals. In our opinion the appeal is utterly without merit.

Plaintiff's case was established at the trial by the uncontradicted testimony of two witnesses. One was plaintiff's assignor, attorney Charles H. Brennan, and the other, attorney Joseph McInerney, who acted in behalf of defendant in carrying on the negotiations with Brennan which resulted in the agreement constituting the account stated. No evidence was offered by the defendant. The following are the facts as established by the testimony of said witnesses: Prior

to October, 1929, Brennan asserted a claim against Strauss for $25,000 for money expended and legal services rendered in behalf of Strauss from April, 1925, until the early part of 1928, in connection with promoting the construction of the Golden Gate bridge. During the month of October, 1929, McInerney, at the request of Strauss, opened negotiations with Brennan for an adjustment of the claim and the negotiations continued on into the month of January, 1930, at which time a settlement was reached whereby it was agreed that Strauss would pay Brennan $10,000 at once or within a very short time. Thereafter, on January 15, 1930, in confirmation of said agreement and at the direction of Strauss, McInerney paid to Brennan the sum of $5,000 and stated that the balance would be paid some time before May 30th of that year, which was satisfactory to Brennan. However, no part of the balance was paid, and on August 2, 1933, Brennan wrote Strauss concerning the matter. Strauss replied on August 11, 1933, repudiating the settlement, and asserting that McInerney was not his attorney and had not been authorized to act for him in the matter of said settlement; whereupon and on December 20, 1933, this action was instituted to collect the balance due.

Defendant contends that McInerney's testimony was incompetent to prove that he was employed by or authorized to represent Strauss in the settlement of the Brennan claim; and in any event that his testimony failed to establish such employment and authorization. The answer to the first point may be found in the case of *Kast* v. *Miller & Lux*, 159 Cal. 723 [115 Pac. 932], wherein the court says: "The rule is well established that the fact of agency when it rests in parol may be established on the trial by the testimony of the agent himself. His testimony is admissible and competent to prove the agency and the nature and scope of his authority and to bind his principal thereby. This is the general, and it may be said, the universal rule." (Citing numerous authorities, to which may be added *Handley* v. *Johnson*, 104 Cal. App. 606 [286 Pac. 428], and *Callahan* v. *General Oil Well Supply Co.*, 130 Cal. App. 32 [19 Pac. (2d) 508].)

As to the second point, the testimony shows that McInerney in the beginning was employed as the attorney for Strauss and the Strauss Engineering Company of Chicago by a Mr. Meyers, Strauss' "representative in the west,

his fiscal agent'', and that afterwards his employment was confirmed by Strauss personally; that following such employment he was directed by Strauss to negotiate for a settlement of the Brennan claim; that at various times during the pendency of the negotiations Strauss consulted with McInerney about the settlement and that McInerney conveyed to Brennan Strauss' messages regarding the matter; and that the final agreement to pay Brennan $10,000 was made by McInerney under the direction of and after conference with Strauss. Furthermore, the testimony shows that the $5,000 which McInerney paid to Brennan in conformity with the settlement agreement had been previously advanced to McInerney by check drawn on the account of the Strauss Engineering Co. of Chicago, and signed by Strauss. As stated, defendant offered no contradictory evidence whatever; and in that state of the record it is idle to assert that there is no evidence showing that McInerney was authorized to act for him.

■ Despite defendant's insistence that McInerney was not his attorney, and the positive declarations made by him to that effect in his letter of August 11, 1933, he also took the opposite position at the trial that McInerney was his attorney, and repeatedly objected to McInerney giving the substance of the conversations had with Brennan in furtherance of the settlement upon the ground that thereby he was revealing confidential communications of his client in violation of the provisions of section 1881 of the Code of Civil Procedure, which provide among other things that an attorney may not without the consent of his client be examined as to any communications made by his client or his advice given thereon in the course of professional employment; and to emphasize the force of his position counsel for defendant added: '' . . . and I at this time want the record to show that he is not released''. It appears, however, that the relationship of attorney and client between McInerney and Strauss had long since been terminated; and defendant now assigns as error the trial court's ruling admitting the testimony covering said conversations. Assuming that defendant may thus take the dual and apparently inconsistent positions above described, there is nothing in McInerney's testimony which in its broadest sense could be construed as a violation of said code section. The substance of the conversation mainly objected to was as follows: ''I called upon Mr. Bren-

nan and told him that Mr. Strauss had asked me to arrive at some settlement or adjustment of the claim that he had asserted against Mr. Strauss. I told him that Mr. Strauss had told me to tell him—Mr. Brennan—that he would not pay that sum,—the sum of $25,000; and that Mr. Strauss had told me to tell Mr. Brennan that he considered that sum excessive and exorbitant. . . . I asked Mr. Brennan what was the least he would take in settlement of his claim; and Mr. Brennan asked me if I were prepared to name the sum which Mr. Strauss would pay. I said I was not, but that if Mr. Brennan would name a reasonable sum, I would endeavor to do my utmost to bring about a settlement on that basis.'' McInerney then went on to say that the final agreement to pay $10,000 was made by him at the direction of Strauss and with the latter's consent. As will be seen, the testimony in question related only to instructions and authority given by Strauss to McInerney which were to be acted upon by the latter in making the settlement, and it is well settled in this state that communications of that kind are not privileged and consequently may not be excluded. (*Henshall* v. *Coburn,* 177 Cal. 50 [169 Pac. 1014].) In so holding, the court in the case last cited quoted approvingly the following from the case of *Koeber* v. *Somers,* 108 Wis. 497 [84 N. W. 991, 52 L. R. A. 512, 513] : ''The proposition advanced by respondent and adopted by the trial court, that one, after fully authorizing his attorney, as his agent, to enter into a contract with a third party, and after such authority has been executed and relied on, may effectively nullify his own and his duly authorized agent's act by closing the attorney's mouth as to the giving of such authority, is most startling. A perilous facility of fraud and wrong, both upon the attorney and the third party, would result. The attorney who, on his client's authority, contracts in his behalf, pledges his reputation and integrity that he binds his client. The third party may well rely on the assurance of a reputable lawyer that he has authority in fact, though such assurance be given only by implication from the doing of the act itself. It is with gratification, therefore, that we find overwhelming weight of authority against the position assumed by the court below, both in states where the privilege protecting communications with attorneys is still regulated

by the common law and in those where it is controlled by statute."

■ Likewise groundless is defendant's final contention that the evidence fails to establish an account stated; or, if so, that it was barred by the statute of limitations. Admittedly the account stated grew out of an asserted claim for legal services extending over several years and the expenditure of money in behalf of the client during that time by the attorney. Therefore, the . items involved were the proper subject of an account stated. (*Crane* v. *Stansbury*, 173 Cal. 631 [161 Pac. 7].) Nor was it necessary, in order to be valid, that the account stated be in writing or arise out of written accounts. (*Converse* v. *Scott*, 137 Cal. 239 [70 Pac. 13]; *Bennett* v. *Potter*, 180 Cal. 736 [183 Pac. 156]; *Boehmke* v. *Westfall*, 106 Cal. App. 754 [289 Pac. 920].) ■ As held in the cases just cited, the balance when struck may be acquiesced in orally, and if agreed upon constitutes a new contract carrying an implied promise to pay. In the present case it appears from the record without dispute that the account was stated in January, 1930, and that the action to collect the balance due was filed in December, 1933. Therefore the action was commenced within the four-year limitation of time fixed by subdivision 2 of section 337 of the Code of Civil Procedure.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 4, 1936.