[Civ. No. 1841. Fourth Appellate District.—June 30, 1938.]

S. D. HALLFORD et al., Respondents, v. ALEXANDER B. BAIRD et al., Defendants; DORIS BAIRD, Appellant.

Max B. Jamison for Appellant.

Halbert & Stone for Respondents.

HAINES, J., *pro tem.*—The present action was commenced by respondents S. D. Hallford and J. F. Hallford, as partners, doing business under the firm name of Hallford's, against Alexander B. Baird and appellant Doris Baird, who were formerly husband and wife, to recover $1450.40 alleged to be due as of April 24, 1933, on an account stated, with legal interest thereon from that date. The answer denies the account stated and as part of a separate defense alleges that the action is barred by subdivision 2 of section 337 of the Code of Civil Procedure. Other matters alleged in the second defense are not insisted upon in the briefs and we need not, therefore, consider them.

Respondents have, for a number of years, conducted a grocery store at Porterville, California. The Bairds, then husband and wife, began to purchase groceries from them in 1928 and continued to do so until July 10, 1931, when the two separated. At that time there remained unpaid to respondents on an open account, for the groceries so purchased, a balance of $1150.40. After the Bairds separated Mrs. Baird

continued to trade with respondents until March, 1933, when she went to live with her parents. In the interval respondents made charges for the groceries which she bought, but her father, one Murphy, paid, in her behalf, for each month's purchases within the succeeding month. Respondents claim to have, from time to time, mailed to Mrs. Baird statements of the balance due them on the old account in connection with her current purchases, upon a form of bill stating that interest would be charged at one per cent per month after thirty days.

The evidence shows that a statement known in the record as Defendants' Exhibit 1 addressed by respondents to "Mrs. Alec Baird" which her father says came to him through the mail with his own bill, covering her purchases for August, 1931, contained at the bottom the words and figures: "Bal. $1150.36", manifestly referring to this old account, and followed by a total in which it is added to the account for August. There is no evidence other than that it is addressed to her that Mrs. Baird ever personally saw this statement. Her father testified that about this time respondents sought to have him take the responsibility for this old account but that he refused to do so, telling them in substance that he would merely take care of his daughter's current monthly bills. Monthly statements rendered by respondents and addressed to Mrs. Baird for September, 1931, and October, 1931, which her father says that he got, are in evidence. In each of these the old balance of $1150.40 seems to have been inserted at the end and carried with the month's account into a total, but both the old balance and this total are in these latter two bills typed out, whether because of the conversation which Mr. Murphy says he had with respondents, or otherwise, we do not know. Respondents manifestly cannot rely on these three old statements as amounting to any account stated between the parties for various reasons. In the first place, no reliance is placed upon them in the pleadings; in the second place, they vary from the account now sued on in that no interest was included in them; in the third place, any account stated as of 1931 would have long since been barred by the statute of limitations. The last payment made by Mr. Murphy on appellant's behalf was on April 24, 1933. At the time she ceased to trade with respondents no part of the old balance of $1150.40 had been

paid and there had accrued thereon at least $300 of interest, making an aggregate of not less than $1450.40. There has been no subsequent change in the amount of this account, which has always been carried on the books in the name of Alexander B. Baird.

J. F. Hallford, one of the respondents, says that he mailed a statement to Mrs. Baird in care of her father, George Murphy, at a date referred to at points in his testimony as April 23, 1933, and elsewhere as April 24, 1933. Both he and respondents' bookkeeper, a Mrs. Hammond, who made out the bills, were very uncertain in their testimony as to whether this particular statement contained anything relating to the old balance, or not. The monthly bill which would cover March, 1933, was paid in Mrs. Baird's behalf on April 24, 1933, by her father, Murphy. J. F. Hallford, as well as Mrs. Hammond, testified that statements of the balance remaining due were mailed to Mrs. Baird at various times after she ceased to trade at respondents' store. Mrs. Hammond says that these were directed to Doris Baird, sometimes in her father's care and sometimes at her street address. Mrs. Baird admits the receipt from time to time of bills covering her monthly purchases while she continued to trade with respondents, but denies ever herself seeing any bill which included the old balance until February 1, 1935, at which time it is admitted that she received through the mail a statement from respondents in the words and figures following:

"Porterville, Calif., Feb. 1st, 1935.

Mrs. Doris Baird, c-o Geo. C. Murphy
    Porterville, Calif.
        In account with

HALLFORD'S GROCERY

'Good things to eat'

502 Main St.                             Term 30 days

Phones 740–741

Bill Rendered                               $1450.40

What do you think the best way to take care of this account? Please let me have your answer as quickly as possible.

HALLFORD."

This Mrs. Baird returned to respondents with the following written by her at the bottom:

"The only thing I can suggest is for you to write to Mr. Baird. I am giving you his address as he sent it to Beverly. I cannot do anything about it myself as I haven't any income of my own and will not ask Dad to pay it.

Sincerely,

Mr. Alec B. Baird,
Casilla 412
Valdivia,
Chile, S. A. DORIS BAIRD."

It is not claimed that Mrs. Baird made any objection to the account other than this memorandum, nor is it really claimed that the amount of the account is incorrect, except as there may be some concession on respondents' part with respect to the amount of interest included as part of it.

The trial court, *inter alia*, found:

"That it is true that within four years last past, to-wit, on the 24th day of April, A. D. 1933, that the defendant, Doris Baird, became indebted to the plaintiffs in this action on an account stated for goods, wares and merchandise, sold and delivered by said plaintiffs to said defenda*nts,* Doris Baird and *Alexander B. Baird, and charged to the Alexander B. Baird account, husband of Doris Baird,* at an agreed price, at the special instance and request of said defenda*nts, Alexander B. Baird,* Doris Baird and *their* family, and that the balance now due owing and unpaid from said defendant, Doris Baird, to the plaintiffs herein on said account stated is the sum of Fourteen Hundred and Fifty and 40-100 ($1450.40) Dollars; (The portions of this paragraph underlined [italicized] were added at the request of the defendant, Doris Baird.)"

It was also found that when these obligations were incurred the Bairds were husband and wife; that it was Doris Baird who actually contracted the debt and that the same was for necessaries of life, to wit, groceries, and that the cause of action against Doris Baird is not barred by the statutory provision pleaded, nor by any law of the state. Judgment was given in the plaintiffs' favor against Doris Baird for the $1450.40 sued for, plus $327.14 interest accrued since April 24, 1933; from which judgment she takes the present appeal.

■ The general principles applicable where reliance is placed on an account stated have been long and thoroughly settled and understood. ''An account stated alters the nature of the original indebtedness, and is itself in the nature of a new promise or undertaking. . . . An action on an account stated is not founded upon the original items, but upon the balance ascertained by the mutual consent of parties.'' (*Carey* v. *Philadelphia & C. Petroleum Co.*, 33 Cal. 694, 696.) ''The term 'stated account' is but an expression to convey the idea of a contract, having an account for its consideration, and is no more an account than is a promissory note, or other contract, having a like consideration for its support.'' (*Auzerais* v. *Naglee*, 74 Cal. 60, 64 [15 Pac. 371].) To like effect are *Hendy* v. *March*, 75 Cal. 566, 568 [17 Pac. 702]; *Baird* v. *Crank*, 98 Cal. 293 [33 Pac. 63]; *Griswold* v. *Pieratt*, 110 Cal. 259 [42 Pac. 820]; *Converse* v. *Scott*, 137 Cal. 239 [70 Pac. 13]; *Kearney* v. *Bell*, 160 Cal. 661, 669, 670 [117 Pac. 925]; *E. W. McLellan Co.* v. *East San Mateo L. Co.*, 166 Cal. 736, 740 [137 Pac. 1145]; *Gardner* v. *Watson*, 170 Cal. 570, 574 [150 Pac. 994]; *Merchant's Nat. Bank* v. *Carmichael*, 178 Cal. 446, 448 [173 Pac. 999]; *Bennett* v. *Potter*, 180 Cal. 736, 745 [183 Pac. 156]; *Duerr* v. *Sloan*, 40 Cal. App. 653 [181 Pac. 407]; *Henning* v. *Clark*, 46 Cal. App. 551 [189 Pac. 714].

■ We have then to inquire to what extent, if at all, these requisites were met by respondents' proof. We have already mentioned the circumstance that neither J. F. Hallford nor Mrs. Hammond, the bookkeeper, who were respondents' only witnesses on the subject, other than appellant herself, appear to be at all certain that the particular statement which was, on either April 23 or April 24, 1933, mailed to Mrs. Baird, made any mention of the old $1150.40 balance. Besides that, neither of these two witnesses mention having said anything therein about any item of $300 interest, though the trial court may have been justified in believing that whatever statement at that time was rendered was sent on a bill form in the heading of which the intention to charge interest on accounts overdue above thirty days was stated; and there is on the respondents' books an item of $300 interest placed at the end of the Alexander B. Baird account which Mr. Hallford says that he figured on the ''approximate basis of 7% for about 3 3-4 years'' on the ''full amount''.

Mr. Hallford's testimony with respect to this statement included the following: "Q. Well, did you mail Mrs. Alexander Baird a statement of this account on April 23rd, 1933? . . . A. Yes. Q. And where was that mailed? A. In care of George Murphy. Q. Care of George Murphy, and that statement at that time, did it include the monthly bill? A. Yes. Q. And did Mr. Murphy pay that bill that month? A. That month, yes. . . . Q. And was the balance shown in the account at that time? A. I do not recall whether it was at that particular time, but it did show from time to time, and it had been regularly shown on the—"

Again he testified: "Q. Well now you do not recall whether you made or mailed a statement to Mrs. Alexander Baird on the 24th day of April, 1933, do you? A. At that time a statement was sent if there was a purchase during that month. Q. Well, if that was sent, it was sent to Mr. Murphy? A. In care of Mr. Murphy. Q. And you do not know whether that contained the balance on it? A. I do know that that particular one did."

It seems probable that there is a clerical omission of the word "not" in the last answer, because no claim is made that there were two April statements mailed, one on the 23d and another on the 24th, and shortly thereafter the witness proceeded as follows: "The Court: You say the statement you sent April 23rd, 1933, you do not know whether that stated the balance due or not? A. The last statement, I do not know whether the last one did or not."

Again he testified: "Q. You do not know, on April the 24th, whether this balance of the account that was due on April, or in August, 1931, was carried forward on this account or not? A. I do not remember."

In rebuttal J. F. Hallford on direct examination testified as follows: "Q. Mr. Hallford, do you know, or have any independent recollection as to whether the statement of the account carried in the name of Alexander Baird in your office was sent during the month of April, 1933? A. It was. Q. Was it sent? A. Yes."

And on cross-examination: "Q. Well, to whom was that account sent? A. Mrs. Alexander Baird in care of George C. Murphy."

It does not appear that after the Bairds separated any change was made in the manner in which the purchases as

they continued to be made were charged on the books. In referring to this statement of the account carried in the name of Alexander B. Baird, therefore, the witness is not necessarily to be understood as making any reference to the old balance, nor to be undertaking to repudiate his earlier statement that he did not know whether the old balance was included in the account at this time rendered or not.

Mrs. Hammond's statement on the subject, appearing in her cross-examination, is as follows: "Q. But you do not know whether the one (statement) in April, mailed out in April 1933, contained any balance on the account? A. I do not."

Respondents say in their brief that: "The balance on the old open book account which defendant and appellant had maintained with the plaintiffs and respondents was struck on or about April 24th, 1933, immediately after the last payment was made on it."

This is as much as to say that it had not yet been struck when this statement was rendered, since the payment was manifestly made in response to the statement. What evidence, if any, is there that it ever was so struck? We find none that it was struck as of any date anywhere near April 24, 1933, except as the amount of the balance may be said to have become ascertainable as a matter of law when the last payment was made. That, of course, is not the same thing as a showing that it was communicated to Mrs. Baird or assented to by her. J. F. Hallford and Mrs. Hammond do indeed claim, as we have seen, that statements of the old balance were, at frequent intervals thereafter mailed to Mrs. Baird, all of which she denies. But except for the statement finally sent on February 1, 1935, respondents have been unable to inform us of any date between April 23 or 24, 1933, and February 1, 1935, on which a single one of these supposed statements was mailed, or to furnish any copy of any one of them, or even to tell us verbally of the exact contents of a single one. Neither does it appear that respondents even claim that in any one of these statements the interest on the unpaid $1150.40 had been in any way computed or added to the principal, so as to make the aggregate total of $1450.40. Neither is there any evidence that any conversations were had between appellant and respondents in respect to any such statements.

■ The evidence then being, for the reasons that we have given, manifestly insufficient to support findings that there was on the particular date alleged, that is, April 24, 1933, any account stated between respondents and appellant, we are confronted with the fact that the pleadings do not assert that there was any statement of account as of any other date. Moreover, since we do not have copies of any statements that respondents may have sent to Mrs. Baird between April 24, 1933, and February 1, 1935, nor any verbal testimony sufficient to give us with exactitude the contents of such purported statements, if such there were, the evidence seems to us insufficient to sustain a finding of any agreement, express or implied, upon any account during the interval.

To be sure, it has been held that a variation of a few weeks or even months between the date alleged in a complaint as that of an account stated, and the date on which the court finds that it was stated, is not necessarily fatal. (*Young* v. *LoPresti,* 95 Cal. App. 79, 84, 85 [272 Pac. 310].) In the instant case, however, there is no finding that any account was stated at any other time than April 24, 1933.

We come then to the effect to be given to the bill sent by respondents to appellant, Doris Baird, on February 1, 1935, and of her reply to it. In the first place, the pleadings in no way count on this as the basis for the alleged account stated. Moreover, even though it is not mentioned either in the pleadings or the findings, if we were able to treat it as being the statement of account here involved, there would still remain the difficulty that appellant has not agreed to pay it. As a matter of law, indeed, when one renders a bill to another, the latter may convert it into an account stated, either by expressly assenting to it as correct without further comment, or else by failure to object to it within a reasonable time. In either event the law, if he has not expressly promised to pay it, will, there being no repudiation by him of responsibility for it, imply such promise on his part. That is the new contract referred to in some of the cases to which reference has already been made. But in the instant case, though it be true that appellant made no objection to respondents' bill of February 1, 1935, as correctly stating the balance then due, she by her writing at the bottom of it expressly declined to take any responsibility for its payment and referred respondents to her former husband.

This seems to us to rebut any possible implication that the law might otherwise raise from her failure to object to its amount of any promise on her part to pay it. In our opinion, then, the evidence is insufficient to justify any finding that there has been any such thing at all as an account stated, in the sense of any new contract between Mrs. Baird and the respondents for payment by her of the sum sued for or any part of it.

It is true enough that if there were evidence to sustain the finding that there had been such account stated as of April 24, 1933, or if it had been pleaded and found that such account was stated at any time subsequent to that, the action would not be barred by subdivision 2 of section 337 of the Code of Civil Procedure or any other applicable statute.

However, in view of what has already been said, we are constrained to hold that the cause of action stated in the complaint has not been proved. The judgment is reversed.

Barnard, P. J., and Marks, J., concurred.